Argued and submitted July 14, 1986, affirmed September 16, reconsideration denied December 18, 1987, petition for review allowed January 12, 1988 (305 Or 21)

STATE OF OREGON,
*Appellant,*

*v.*

ROGER JONATHAN SCOTT CAMPBELL,
*Respondent.*

(85-164, 85-165; CA A37511)

742 P2d 683

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Michael D. Curtis, Metropolitan Public Defender, Oregon City, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Warren, J., dissenting.

## BUTTLER, P. J.

The state appeals from an order in these consolidated cases suppressing evidence discovered as a result of the installation and monitoring of an electronic tracking device attached to the exterior of defendant's car without a warrant under circumstances that the state concedes did not provide probable cause or any exception to the warrant requirement. The state urges this court to hold that the police may, without the knowledge or consent of the owner, attach a beeper to anyone's automobile for any or no reason, without a warrant or any exception to the warrant requirement, for the purpose of tracking its movement and pinpointing its location at all times. We decline to do so and affirm.

Defendant was convicted of burglary in the first degree in Washington County in April, 1984, and was placed on probation. In December, 1984, and January, 1985, several burglaries were committed in northern Washington County and in Columbia County. There were common characteristics in all of those burglaries: The burglar kicked in the front door of the house and removed guns, jewelry, televisions and stereos, sometimes using a blanket to carry away the property. The Washington County Sheriff's Office suspected that defendant was involved in those crimes because of his criminal history, the fact that his car was seen "in the area of some of the * * * burglaries" and that the location of defendant's residence allowed easy access to the scene of the burglaries.

The Washington County Sheriff's Office organized a team of officers to keep defendant under visual surveillance. Approximately ten officers from Washington, Columbia and Multnomah Counties and the Oregon State Police attempted to track his movements; however, they were not successful. Defendant employed evasive tactics, such as driving fast, making quick stops and doubling back in the direction from which he had come.

The officers decided to place an electronic tracking device ("beeper") on defendant's automobile. A beeper is a battery operated radio transmitter that emits signals that can be picked up by a radio receiver. It allows the person monitoring the receiver to track the location of the beeper and, hence, the object to which it is attached. Detective Welch of the

Washington County Sheriff's Office had learned that defendant was scheduled to meet with his probation officer on January 15, 1985, and when he located defendant's car in the parking lot adjacent to the Washington County Courthouse, he attached the beeper to the underside of the car, using magnets. He did not open the passenger compartment or trunk of the vehicle.

When defendant left the meeting, the team of officers continued their surveillance with the aid of the beeper. They spent several hours each day monitoring the beeper and attempting to keep defendant under visual surveillance, including times during which the car was at defendant's residence.

When the signal grew fainter, Welch had defendant's probation officer reschedule a meeting with defendant so that Welch could replace the batteries, which he did surreptitiously on January 21, in the same parking lot. The officers also added an airplane to aid them in their surveillance. The next day, after much difficulty, two officers flying at an altitude of 4,000 feet picked up a faint signal from the beeper. Eventually, they got a fix on it east of Molalla in Clackamas County. One of the officers recognized defendant's car parked on the side of a public road near a house. He saw an individual (whom he could not identify from that altitude) come out of the house carrying a load of material and place it in the trunk of defendant's car, which was driven away while the officers in the plane maintained visual and electronic contact surveillance.

The driver proceeded to another house and parked in the driveway. A person got out of the car, walked to the front door and circled the house. He returned to the car and drove out of the driveway to a spot alongside the public road near the home. The officers in the plane then observed the person walk back to the house and apparently enter it, although they could not see the actual entry.

Because they believed that a burglary was in progress, the officers in the plane called Clackamas County sheriff's deputies for assistance. Two patrol cars arrived, and the officers in the plane observed a man running from the back of the house into the woods. The pilot put the plane into a steep dive, which enabled the other officer to identify the fleeing

burglar as defendant. Defendant was arrested and charged with two counts of burglary in the first degree.

Defendant moved to suppress the evidence of the burglaries, claiming that the electronic surveillance of him violates Article I, section 9,[1] of the Oregon Constitution and the Fourth Amendment[2] to the federal constitution. The trial court granted defendant's motion.

We examine questions of state law before considering any claims under the federal constitution. *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983). Whether the installation and monitoring of an electronic tracking device is a "search" or "seizure" within the meaning of Article I, section 9, is a question of first impression. If it is either, the trial court must be affirmed, because the police had no warrant and there was no exception to the warrant requirement.

A "search" occurs when a person's privacy interests are invaded. *State v. Owens,* 302 Or 196, 206, 729 P2d 524 (1986). A "seizure" under Article I, section 9, occurs when there is a significant interference with a person's possessory or ownership interests in property. 302 Or at 207. Defendant's automobile is his effect, *State v. Turecek,* 74 Or App 228, 232, 702 P2d 1131 (1985), and a search or seizure of it is specifically subject to the warrant requirement of Article I, section 9. Defendant, as the owner of his automobile, has the right to exclude from it all other persons. The state has the limited authority to search or seize defendant's effect, only if it has probable cause to do so and has obtained a warrant or there exists an exception to the warrant requirement.

The installation of the beeper was a trespass to defendant's effect—an intentional, unprivileged intermeddling

---

[1] Or Const, Art I, § 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[2] US Const, Amend IV, provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

with his chattel, *see Restatement (Second) Torts,* § 217 (1965), or making an unpermitted use of it. Prosser, *Law of Torts* § 14 (1971). Defendant would have been justified in using force to prevent the installation of the device. *See Restatement (Second) Torts,* § 77, *comment a* (1965). The question remains whether the state's interference with defendant's possessory interest in his automobile is "significant" enough to be a seizure.

Although the state's trespass did not physically deprive defendant of his automobile or, by itself, provide the state with information about defendant, it provided the state with a technologically enhanced means to track every movement that defendant made in his car. Accordingly, the installation of the beeper and police monitoring of it substantially transformed defendant's automobile from his private personal effect to a tool of the state. The beeper continually broadcast a signal to the police, informing them of the location of defendant's automobile and, therefore, of defendant himself. The automobile had been, in a very real sense, converted to the state's use. An interference of that scope with defendant's possessory interest is substantial. Accordingly, we hold that the installation and monitoring of an electronic tracking device on an automobile is a seizure within the meaning of Article I, section 9. As such, it is subject to the requirement that the police obtain a warrant based on probable cause or that there be an exception to the warrant requirement.

The significance of the state's interference is apparent from the unsuccessful attempts by the police to keep defendant under visual surveillance for many weeks before resorting to electronic surveillance. It is disingenuous to argue, as the state does, that the beeper only allowed the officers to do what they could have done legally: keep the defendant under visual surveillance. The advantage of the beeper lies in its enhancement, to a substantial degree, of the officers' ability to locate defendant at any given time in order to keep him under visual surveillance. The tracking of the beeper's signal eventually led a surveillance team to Clackamas County, where they were able to observe and arrest defendant and obtain the physical evidence of which suppression is sought. Those observations and evidence were derived immediately from the unlawful seizure; as such, they were fruits of the poisonous tree. *Wong Sun v. United States,* 371

US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).[3] In that case, there were two defendants, Wong Sun and Toy. Officers unlawfully entered Toy's living quarters and unlawfully arrested (that is, seized) him. Toy made statements to the officers that led them to Johnny Yee at another residence, where they seized narcotics. The Court held that the narcotics could not be used as evidence against Toy, because they were obtained by exploitation of information obtained by the unlawful entry and arrest of Toy. Here, as in *Wong Sun,* the evidence relating to the burglaries must be excluded because of its tainted relationship to information obtained from the unlawful seizure.

Given our holding that defendant's car was unlawfully seized, we need not decide whether the installation and monitoring of the beeper was a "search." We note, however, that two state courts, interpreting their respective state constitutions, have held that monitoring a beeper is a search. The Supreme Court of Hawaii in *State v. Kelly,* 708 P2d 820 (Haw 1985), ruled that police interception of a photo album in the mail, placement of a beeper in the album and subsequent delivery to the defendant was an unlawful search. The Supreme Court of Colorado, in *People v. Oates,* 698 P2d 811 (Colo 1985), held that a person has a legitimate expectation of privacy in a commercially purchased item and that placing a beeper in a container of chemicals that was to be sold to the defendant was an unlawful search under the Colorado Constitution.

Because we have concluded that the police are prohibited by the Oregon Constitution from engaging in the conduct in question, we need not decide whether the federal constitution was violated. We note only that the question does not appear to have been decided. *See United States v. Karo,* 468 US 705, 104 S Ct 3296, 82 L Ed 2d 530 (1984); *United States v. Knotts,* 460 US 276, 103 S Ct 1081, 75 L Ed 2d 55 (1983). In both of those cases, government agents installed a beeper in a container of ether with the consent of the owner, who later sold the drum to the defendant. In *Knotts,* the installation of the beeper was not challenged; in *Karo,* the Court held that the original owner's consent was sufficient to "validate the placement of the beeper in the can," 468 US at

---

[3] *Wong Sun v. United States, supra,* is applicable under Article I, section 9. *State v. Hansen,* 295 Or 78, 664 P2d 1095 (1983).

711, and that the later transfer of the can to the defendant did not constitute a seizure by the government. However, it held that monitoring the beeper while the can was in the defendant's house was a search in violation of the Fourth Amendment.

Affirmed.

**WARREN, J.,** dissenting.

Because I disagree with the majority's conclusion that the attachment of an electronic locator to the exterior of defendant's vehicle resulted in a seizure within the meaning of Article I, section 9, I dissent.

A seizure occurs when there is "a significant interference with a person's possessory or ownership interest" in his effect. *State v. Owens,* 302 Or 196, 207, 729 P2d 524 (1986). In affirming the trial court's exclusion of the evidence discovered in the vehicle the majority holds that the warrantless placement of an electronic locator was a significant interference with defendant's possessory interest in his vehicle and, hence, a seizure. Although attachment of the locator enabled the state to follow and locate defendant, it in no way affected his ownership or possessory interest. He had the full use of his vehicle for any and all purposes, legal and illegal.

Defendant had a constitutionally protected right to the possession and use of his vehicle. The fact that the locator enabled the police to observe him making use of it for an illegal purpose did not interfere with his possessory interest. The only interference was with defendant's *successful* use of the vehicle for criminal purposes and his ability to evade the law. Those are not interests which are constitutionally protected.

Because the majority holds that there was a seizure of defendant's vehicle, it does not decide whether, assuming that there was not a seizure, there was a search. A search is an invasion of a person's privacy interests in his or her effect. *State v. Owens, supra,* 302 Or at 206. Although defendant may have desired to remain unobserved in his activities, he had no privacy interests in the use of his vehicle in a public place. *See State v. Holt,* 291 Or 343, 630 P2d 854 (1981). Accordingly, under the state constitution there was no search.

The majority is correct that the precise question involved in this case has not been decided by the United States Supreme Court under the Fourth Amendment. However, in *United States v. Pretzinger,* 542 F2d 517, 520 (9th Cir 1976), the Ninth Circuit Court of Appeals held, on similar facts, that there was no search under the federal constitution. The analysis in that case is persuasive, and I would hold on the facts of this case that there was no federal constitutional violation.

The majority's disapproval of the police tactic used in this case has resulted in a distorted analysis of constitutional law. The fact that there may have been a civil trespass to defendant's personal property or that we may not like the surveillance tactics used does not mean that there was a search or a seizure.