Argued and submitted May 27, resubmitted In Banc November 4, 1987, affirmed
February 10, reconsideration denied April 8, petition for review allowed May 3, 1988
(305 Or 594)

STATE OF OREGON,
*Respondent,*

*v.*

ROBERT LEE BELCHER,
*Appellant.*

(86-CR-0140-TM; CA A41457)

749 P2d 591

Marsha Mussehl, Salem, argued the brief for appellant. On the brief was Gary D. Babcock, Public Defender, Salem.

David Schuman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

WARREN, J.

Buttler, J., dissenting.

Warden, J., dissenting.

## WARREN, J.

Defendant appeals his conviction for burglary in the first degree. He assigns as error the trial court's denial of his motion to suppress evidence found in a small leather bag inside his backpack. He further challenges the trial court's failure to suppress certain statements that he made. We affirm.

Defendant was involved in a fight at a public parking lot. When the police arrived, he and other participants fled. Some of the remaining bystanders informed the police officer that one of the fighters had dropped a wallet, which was lying on the ground. None of the witnesses knew who owned the wallet. The officer opened it and found that it contained defendant's identification. Sometime later the officer noticed a red backpack lying in the lot. The pack was open, and he could see clothing in it. The officer asked bystanders whether they knew the owner of the pack, but none of them did. He then fully opened the pack and found a pair of shorts, a T-shirt, coins and a small leather bag. When the officer opened the bag, he found jewelry, which he suspected was from a recent burglary.

The next morning, another officer went to see defendant at his residence. Defendant appeared bruised and told the officer that he had been in a fight the previous night. The officer told defendant that the police had found his wallet and a red backpack. Defendant said that he did not know that it had been missing. In response to the officer's questions, he also said that the backpack and clothing were his but that the jewelry and coins were not. He then voluntarily accompanied the officer to the police station, where he was informed of his *Miranda* rights, which he waived. Subsequently, he confessed that he had obtained the jewelry in a burglary.

Defendant first assigns error to the trial court's denial of the motion to suppress the contents of the small bag on the ground that they were the fruit of an unreasonable, warrantless search. The trial court denied the motion on the basis that, under the circumstances, there was no reasonable expectation of privacy in the contents of the abandoned pack. Defendant relies on *State v. Rounds,* 73 Or App 148, 698 P2d 71, *rev den* 299 Or 663 (1985), in which we concluded that the search on private property of a closed backpack which the

officer knew the defendant had visited as recently as 15 minutes before was a search subject to constitutional protection. We held that the opening of a cigarette box inside the backpack was unreasonable.

■ The critical issue here is whether the search and seizure of the pack and its contents violated defendant's Article I, section 9, rights, that is, in particular, the privacy he has a right to expect from the government. If it did, the evidence should have been suppressed. *State v. Tanner,* 304 Or 312, 315-16, 321 n 7, 745 P2d 757 (1987).

■ Defendant would have no right to expect privacy from the government or anyone else in the pack and could not raise the issue of reasonableness of the search, if he had abandoned it. *State v. Tanner, supra,* 304 Or at 321. In the law of property, abandonment is the voluntary, intentional relinquishment of possession by the owner with the intention of terminating his ownership. *Rich v. Runyon,* 52 Or App 107, 112, 627 P2d 1265 (1981). For constitutional purposes, "abandonment" addresses a different concern and has a different focus. We are not concerned with whether an owner has relinquished control over the property in a manner such that whoever acquires it may successfully assert ownership against the former owner. We are only concerned with whether the owner has left his property under circumstances which objectively make it likely that others will inspect it. Stated differently, in the constitutional context we are concerned with whether the owner has "abandoned" his right of privacy in the property so that its inspection presents no question of a search with constitutional implications. *State v. Green,* 44 Or App 253, 259, 605 P2d 746 (1980).[1]

---

[1] The dissents say that, because Article I, section 9, guarantees defendant's privacy right in his personal effect, the reasonable expectation of privacy under the federal analysis has nothing to do with the case. That misses our point. The source of the privacy right in a personal effect is not critical in our view. The fact that the Oregon Constitution guarantees privacy in personal effects does not mean the right of privacy cannot be lost, but that is what the dissent assumes. The dissents' criticism of our reliance on *State v. Green,* 44 Or App 253, 605 P2d 746 (1980), also misses the point. Although *Green* is phrased in the terms of the federal "expectation of privacy" analysis, whereas the state constitutional analysis focuses on the "right of privacy," *see State v. Tanner, supra,* 304 Or at 321 n 7, we see no reason why the *Green* "abandonment for constitutional purposes" rationale should not be applicable under both concepts. The question is not whether we analyze the facts on a federal or state constitutional basis. Both constitutions guarantee privacy in personal effects. It is plain that, at some point, a person who has left property in a public place where others can find it must anticipate that the natural curiosity of others will reveal its contents. We do not believe that either the federal or state constitution is designed to protect from exposure by governmental inspection that which appears objectively to have been left available for public scavenging.

We agree with the trial court that the circumstances of this case are different from those in *State v. Rounds, supra,* where the backpack was found in the carport on private property. The officer knew that the defendant had returned to his backpack at least once after placing it in the carport. We concluded that, under those circumstances, there was no objective basis for the officer reasonably to think that the pack had been abandoned. *State v. Rounds, supra,* 73 Or App at 152.

In this case, the officer found the pack, which was open, on a public parking lot. He was aware that a fight had taken place and that the participants had fled. The wallet with defendant's identification was not in the pack; the officer did not know that defendant also owned the pack. His questioning of bystanders produced no results. He could reasonably conclude that the pack had been left by one of the participants in the fight who had fled the scene. Although the property intruded upon was a personal effect, we hold that defendant, in fleeing the scene and leaving the pack behind in a public place, abandoned the pack in the constitutional sense that he retained no right of privacy in it. The officer's inspection of its contents was not a search subject to constitutional protection.

For the same reason, defendant's argument that his statements to the police concerning the contents of the pack should be suppressed as "fruit of the poisonous tree" also fails.

Affirmed.

**BUTTLER, J.,** dissenting.

Because the pack is defendant's "effect" within the meaning of Article I, section 9, it is not necessary for him to establish any expectation of privacy, subjective or objective, in it. The constitution guarantees his privacy interest and, unless defendant had abandoned the pack, the officer had no authority to inspect its contents without a warrant, because no exception to the warrant requirement existed and none is claimed.

The majority concedes that there was no common law abandonment. 89 Or App at 404. However, it says that, for constitutional purposes, the standard is less rigid, requiring only a showing that, objectively, "the owner has 'abandoned' his reasonable expectations of privacy in the property so that

its inspection presents no question of search with its constitutional implications," citing *State v. Green,* 44 Or App 253, 605 P2d 746 (1980). *Green* was decided before *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), and relied on cases decided under the federal constitution that apply the analysis of *Katz v. United States,* 389 US 347, 361, 88 S Ct 507, 19 L Ed 2d 576 (1967). (Harlan, J., concurring.)

Since *Caraher,* cases decided under the federal constitution are not controlling in the interpretation of the Oregon Constitution, and the *Katz* analysis is not applicable to determine whether there has been a search of an effect within the specific protection of Article I, section 9. *See State v. Louis,* 296 Or 57, 672 P2d 708 (1983); *State v. Rounds,* 73 Or App 148, 698 P2d 71, *rev den* 299 Or 663 (1985); *State v. Campbell,* 87 Or App 415, 742 P2d 683 (1987), *rev allowed* 305 Or 21 (1988); *State v. Dixson/Digby,* 87 Or App 1, 740 P2d 1224, *rev allowed* 304 Or 437 (1987). The majority's attempt to apply the *Katz* analysis here is in error.

The majority attempts to distinguish *State v. Rounds, supra,* on the basis that the backpack in *Rounds* was found by the police on private property and that the police, investigating a suspected burglary attempt, had been told that the defendant had returned to it at least once after leaving it there. For those reasons, we held that there was "no objective basis for the officer reasonably to think that it had been abandoned." 73 Or App at 152. The officer, however, did not know that the defendant was related to the property owner. Here, the officer was investigating a fight at a public parking lot. When he arrived at the scene, defendant and other participants fled, leaving some belongings behind—a wallet and a backpack. There was no objective basis for believing that either of those items was abandoned. They remained defendant's effects in which Article I, section 9, guarantees his privacy, so long as there remained a possibility that he would reclaim them. *State v. Tanner,* 304 Or 312, 745 P2d 757 (1987). Defendant's "reasonable expectations of privacy," on which the majority relies, has nothing to do with the case. Because the pack was opaque, and there was nothing about it that "announced its contents," a warrant was necessary to conduct a search of it. *State v. Owens,* 302 Or 196, 729 P2d 524 (1986).

The officer was entitled to take possession of the

pack to secure it for return to its owner. He had no right to search through it without a warrant, at least in the absence of an authorized administrative program requiring an inventory of its contents. *State v. Perry,* 298 Or 21, 688 P2d 827 (1984); *State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984). The state does not attempt to justify the search on that basis.

Because I believe that the warrantless search of defendant's pack was unlawful, I respectfully dissent.

Joseph, C. J., and Newman, J., join in this dissent.

**WARDEN, J.,** dissenting.

The majority holds that defendant owned the backpack and its contents but that, somehow, he had no constitutionally protected interest in them. That holding violates Article I, section 9, of the Oregon Constitution. It is based on a distinction between abandonment of ownership and abandonment "in the constitutional context," 89 Or App at 404, which has no basis in Oregon law. I therefore dissent.

The majority seems to recognize that, if defendant retained any rights in the backpack, the officer violated them when he searched it. The only purpose for which the officer could legitimately look through the pack, based on the information that he had when he did so, was to discover who owned it. The trial court stated that it was unlikely that the leather bag contained any identification, and I agree. Accordingly, the search fits the general "principle that, in a non-investigative, nonemergency situation, it is unreasonable for an officer to open a closed container." *State v. Rounds,* 73 Or App 148, 155, 698 P2d 71, *rev den* 299 Or 663 (1985); *see also State v. Keller,* 265 Or 622, 510 P2d 568 (1973).[1]

The majority does not claim that defendant abandoned his ownership of the backpack when he dropped it. Such a claim would be untenable, because abandonment of ownership requires that defendant voluntarily relinquish possession of the pack with the intention of terminating his ownership without vesting ownership in any other person. *Dober v. Ukase Investment Co.,* 139 Or 626, 629, 10 P2d 356

---

[1] There is no evidence that the officer acted in accordance with a properly authorized administrative program, designed and administered so that his actions involved no exercise of discretion. *See State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984).

(1932); *Rich v. Runyon*, 52 Or App 107, 112-13, 627 P2d 1265 (1981); *see also* 1 CJS, "Abandonment," § 6. Rather, the majority asserts that defendant abandoned his constitutional protections in the pack. In arriving at that conclusion, the majority relies on a case decided under the Fourth Amendment and ignores at least the last five years of Oregon search and seizure case law.

In *State v. Green*, 44 Or App 253, 605 P2d 746 (1980), the case on which the majority relies, the defendant and a companion had fled on foot after being chased in their car by friends of a person whose house they had burglarized. They left their car after finding themselves on a dead-end street. The police impounded the car and searched it without a warrant. We held:

> "Where two suspected thieves have been pursued from the scene of an apparent burglary and finally leap from their car and flee, they have abandoned any expectation of privacy with respect to the car in the same way that a fleeing robber who drops a bag of loot has abandoned the loot. Society is not prepared to recognize as reasonable—and the constitution does not compel it to recognize as reasonable—any subjective expectation of (or hope for) privacy the fleeing burglars may have retained in the car they left behind."

While the opinion does not state on which constitution it relies, it cites Fourth Amendment cases, including one federal court of appeals case. 44 Or App at 259.

We decided *State v. Green, supra,* in the period between *State v. Florance*, 270 Or 169, 527 P2d 1202 (1974), and *State v. Caraher*, 293 Or 741, 653 P2d 942 (1982), a period when the Oregon Supreme Court was construing Article I, section 9, consistently with federal interpretations of the Fourth Amendment. Our decision followed that lead and determined the defendant's rights in the car by applying the federal "reasonable expectation of privacy test" derived from *Katz v. United States*, 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967). Our statement that "the facts in this case constitute abandonment—not abandonment in the common law sense, but abandonment for constitutional purposes," 44 Or App at 259, is meaningless except in the context of the *Katz* test.

With *State v. Caraher, supra,* the Supreme Court reasserted the independent status of Article I, section 9. In

*State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984), we concluded that it would "treat post-*Florance* but pre-*Caraher* cases as federally-based and as deciding nothing under the Oregon Constitution, even when they purport to adopt a federal rule as the Oregon constitutional rule." 68 Or App at 625. That prediction was correct. *See, e.g., State v. Tanner,* 304 Or 312, 745 P2d 757 (1987); *State v. Owens,* 302 Or 196, 729 P2d 524 (1986); *State v. Kock,* 302 Or 29, 725 P2d 1285 (1986). Thus, *State v. Green, supra,* retains precedential value only if the *Katz* test is consistent with Oregon law; it is not.

Article I, section 9, protects the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *." In *State v. Turechek,* 74 Or App 228, 702 P2d 1131 (1985), the issue was whether an officer could properly search a pickup truck for its vehicle identification number (VIN). Cases from other jurisdictions were in conflict on whether vehicle owners had a reasonable expectation of privacy in the VIN or in the area of the vehicle where it was located. We did not decide the case on that basis. We simply noted that the "protection of Article I, section 9, extends to 'effects', among which defendant's pickup is surely included." 74 Or App at 232. We therefore held that the officer conducted a search when he opened the truck's door to find the VIN. That holding was consistent with our previous holding that the *Katz* test was irrelevant when a place searched was within the curtilage of the defendant's home. *See State v. Ohling,* 70 Or App 249, 252 n 4, 688 P2d 1384, *rev den* 298 Or 334 (1984); *State v. Russo,* 68 Or App 760, 764 n 1, 683 P2d 163 (1984). Even if *Katz* had any role under the Oregon Constitution, that test could not reduce the protection which the constitution explicitly affords. "If a police intrusion is a trespass into the defendant's home, papers or effects, it violates the defendant's rights." *State v. Dixson/Digby,* 87 Or App 1, 9 n 8, 740 P2d 1224, *rev allowed* 304 Or 437 (1987). If a person owns property, that person necessarily retains rights in it which the constitution protects. There is no distinction under the Oregon Constitution between abandonment for common law purposes and for constitutional purposes.

*State v. Tanner, supra,* makes that point clear. In *Tanner,* the police, while searching a house in violation of Article I, section 9, discovered property which the defendant

had pledged to the owner of the house as security for a loan. The issue was whether the defendant could assert the illegality of the search in order to exclude the evidence from his trial for theft of the property. The Supreme Court emphasized that Article I, section 9, protects both privacy and property interests: privacy interests from search and property interests from seizure. 304 Or at 319; *see also State v. Owens, supra,* 302 Or at 206; *State v. Elkins,* 245 Or 279, 286-88, 422 P2d 250 (1966). Because the defendant attacked only the discovery of the property, not its seizure, the court emphasized his privacy interest. However, in doing so it criticized the *Katz* test, 304 Or at 321-22 n 7, and did not use it in determining the defendant's rights. Rather than having those rights depend on the defendant's expectations, it held that an illegal police search which violated the rights of the person to whom the defendant entrusted the property also violated the defendant's rights.

The Supreme Court rejected the state's arguments that the defendant's limited rights to the property meant that he had no privacy interest in it:

"The state contends that defendant had no immediate right of access to the tapes and equipment, but that fact alone does not preclude defendant's continuing entrustment of the effects. *So long as there remained a possibility that defendant would reclaim the effects,* the entrustment was sufficiently viable to demonstrate that the illegal search of the Best residence violated his privacy interest under section 9." 304 Or at 323. (Emphasis supplied.)

Accordingly, the defendant in *State v. Tanner, supra,* had a continuing privacy interest in the property that he had pledged and which he might lose if he could not repay the loan. In the present case, defendant also had continuing property and privacy interests in a backpack whose ownership he did not abandon and in which he, unlike the defendant in *Tanner,* continued to have the paramount right of possession. If anything, his interests are stronger than those of the defendant in *Tanner.* Article I, section 9, gives those interests protection, which the officer's search violated, and which the majority strips from him by its unfounded distinction between property law and constitutional abandonment. I cannot agree and therefore dissent.

Joseph, C. J., and Newman, J., join in this dissenting opinion.